IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Darryl Keith Rice,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social<br>Security,<br><br>    Defendant.<br>_____ | Civil Action No.  2:12-3420-MGL-BHH<br><br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

  This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The plaintiff, Darryl Keith Rice, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

  The plaintiff was 44 years old on his alleged disability onset date of January 8, 2009. (R. at 17.)  The plaintiff claims disability due to diabetes, nodules in his lungs, prostate cancer, hypertension, high cholesterol, and neuropathy in his hands and feet.  (R. at 170.) The plaintiff has a GED (R. at 67) and past relevant work as a grocer, forklift operator, and spot welder (R. at 175, 196).

  The plaintiff filed an application for DIB on February 25, 2009.  (R. at 157-58.) His application was denied initially and on reconsideration. (R. at 105-09.) An Administrative Law Judge (ALJ) held a hearing, on July 13, 2011. (R. at 58-104.) In a decision dated October 6, 2011, the ALJ found that the plaintiff was not disabled. (R. at 9-19.) The Appeals

---

  [1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> (2)    The claimant has not engaged in substantial gainful activity since January 8, 2009, the amended onset date (20 CFR 404.1571 *et seq.*).
>
> (3)    The claimant has the following severe impairments: uncontrolled diabetes with neuropathy in his hands and feet; hypertension; bilateral carpal tunnel syndrome; and degenerative disc disease, lumbar spine, with disc bulge at L4-5 (20 CFR 404.1520(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, I find the claimant is able to lift up to 15 pounds on an occasional basis and lift or carry up to 10 pounds on a frequent basis. I find he can stand or walk for approximately two to four hours out of an eight-hour workday, with normal breaks allowed. I further find he is limited to jobs which have a sit/stand option which is consistent within the exertional limits described. Additionally, as a result of this sit/stand option, the claimant cannot be off-task more than 5% of the work period and he cannot leave the workstation. I find he can sit in up to 60-minute time segments at any one time and he can stand or walk in one-to-thirty-minute time segments at any one time. He can occasionally use his upper extremities to operate push/pull controls bilaterally. He can also occasionally use his lower extremities to operate foot controls bilaterally. However, he cannot do any commercial driving. I find he can never crouch or climb ladders, ropes, or scaffolds but he can occasionally climb ramps or stairs, stoop, kneel, or crawl. I find he can balance for up to four hours out of an eight-hour workday. He is capable of frequent fine manipulations of items no smaller than the size of a paperclip,

with both of his hands. He must avoid concentrated exposure to extreme cold and excessive vibrations. Additionally, he must avoid even moderate exposure to hazards like the use of moving machinery and exposure to unprotected heights. Lastly, I find he is limited to simple, routine and repetitive tasks.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7)     The claimant was born on November 28, 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the amended disability onset date (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from January 8, 2009 through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, The plaintiff alleges that the ALJ failed (1) to associate a consultative examiner and (2) to resolve a conflict between the plaintiff's and vocational expert's testimony. Because of their interrelatedness, the Court will consider the objections together.

As stated, the plaintiff first argues that the ALJ erred by not ordering a consultative examination ("CE") to determine the severity of the plaintiff's diabetes and how best to manage it. Specifically, the plaintiff contends that an ambiguity existed as to how much disruption in a work day would be caused by the ongoing management of his diabetes.

"A consultative examination may be purchased 'to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow . . . a determination or decision on [the] claim.'" *Davis v. Astrue*, 2012 WL 5879436 at *12 (D.S.C. Nov. 6, 2012) (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). Moreover, "the regulations state that the ALJ has discretion in deciding whether to order a consultative examination." *Bishop v.*

*Barnhart*, 78 Fed. App'x 265, 268 (4th Cir. 2003) (unpublished) (citing 20 C.F.R. §§ 404.1519a, 417.919a); *see also Singleton v. Barnhart*, 399 F.Supp. 686, 690 (D.S.C. 2005).

The plaintiff testified that to manage his diabetic condition he would have to eat a candy bar sometimes 3-4 times during a work shift. (R. at 69.) The plaintiff testified that it might take as long as 5-10 minutes before he could go back to work because of the time needed to bring his sugar levels up. *Id.* at 70. The plaintiff additionally represented that doctor's instructions required him to undergo insulin blood sugar testing and administration three times in a workday. (R. at 78, 352.)

The plaintiff argues that a CE was necessary to confirm the plaintiff's testimony in this respect. (Pl. Brief at 10.) But, the ALJ did not materially dispute it. The ALJ agreed that the plaintiff had legitimate difficulty controlling his blood sugar levels. (R. at 11, 16.) And, the ALJ essentially credited the plaintiff's representations as to workday disruptions but found no reason in the record as to why they could not be accommodated. (R. at 16.) In fact, the plaintiff himself offered that he could "go right back to work because it – the candy bar bring [sic] it up fast." *Id.* at 70. So regardless of his specific time estimation, the ALJ might have reasonably interpreted the substance of the plaintiff's testimony to be that the activity was not significantly disruptive. The ALJ concluded that there was nothing in the record to indicate that the plaintiff could not eat these snacks while working. (R. at 16.)

But, the plaintiff emphasizes the vocational expert's ("VE") admission that the plaintiff likely would be required to step away from his workstation to conduct any insulin testing in such a manner as would constitute a formal break. (See R. at 97-98.) Indeed, this is the plaintiff's second objection, on appeal, that the VE's testimony in this respect is inconsistent with the plaintiff's testimony as to how much time he would need for diabetes management generally. (Pl. Brief at 10-11.) In other words, the plaintiff claims that he needs too many extended breaks and that the VE largely agrees.

The VE, however, testified that it would be permissible for an unskilled worker to take a 15 minute break in the morning and afternoon, a 30 minute lunch, and two additional

6

breaks of very short duration during the workday. (R. at 94.) That amounts to five opportunities for the plaintiff to manage his blood sugar, including eating candy bars, even assuming some inability to snack on an ongoing basis throughout the workday. His testimony, therefore, that he needs for 5-7 such occasions is essentially in line with any foreseeable schedule. (R. at 70-76.) Taken as literally and absolutely as possible, the plaintiff's testimony suggests that he might need one more snack opportunity than the total number of breaks allowed. But, for that discrepancy to defeat the ALJ's view, as a legal matter, would mean that such overage of one snack happened every single day and that, of the three to four snack needs each day, the plaintiff's blood sugar would never return more rapidly while eating than suggested or that he could not eat one or more snacks at his desk as the ALJ presumed. That is not the plaintiff's testimony. The plaintiff qualified his own testimony by stating that he would need to snack 3 or 4 times a day "sometimes." (R. at 69.) There is no evidence that his snacking requirements are so absolutely consistent and demanding that five break opportunities in a day would not accommodate his insulin and snacking demands on average.

Said again, the plaintiff has 5 break opportunities. Three of those are of 15 or more minutes in duration. He is required to check his insulin three times a day, likely away from his workstation. Those three official breaks reasonably accommodate that need. The VE stated that the plaintiff would also enjoy two other shorter informal breaks. Between those two breaks and an opportunity to snack at his workstation throughout the day, there does not seem to be any reason to find erroneous the ALJ's conclusion that the plaintiff's "sometimes" snack need of 3-4 per day might also be accommodated. The Court would be reaching, unnaturally, to recommend different.

In addition to the relative mathematics of the evidence, the ALJ cited other reasons to believe that the plaintiff's off-task needs were not inconsistent either with the recommended Residual Functional Capacity ("RFC") or the jobs in the national economy identified by the VE. The ALJ noted that there was no evidence that the plaintiff had ever

7

passed out on the job, been hospitalized, or that he had ever been refused work for on-the-job disruptions, as described. (R. at 16-17.) The ALJ also noted the plaintiff's ability to care for his one year old grandson over the course of a six hour day. (R. at 17.) Importantly, the ALJ directly accommodated the plaintiff's diabetes related limitations and neuropathy by restricting his Residual Functional Capacity to light work and including limitations on his ability to use foot pedals, manipulate objects smaller than a paperclip, and to a 5% off-task restriction. (R. at 11, 16.) The ALJ found no evidence of record suggesting any greater limitations. (R. at 17.) The plaintiff cites none now. There is certainly no ambiguity or inconsistency to rehabilitate or resolve with a CE.

Remembering the ALJ's discretion in the choice to call any CE, the Court cannot recommend any error in his decision not to, here. For essentially the same reasons, there was no inconsistency between the plaintiff's and VE's testimony, which required resolution. The VE testified to a work schedule that could accommodate the plaintiff's diabetes management need.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                              s/BRUCE H. HENDRICKS
                                              UNITED STATES MAGISTRATE JUDGE

December 2, 2013
Charleston, South Carolina